PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LOWRY, | ) | CASE NO. 4:12CV00816 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| JP MORGAN CHASE BANK, N.A., | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** (Resolving ECF No. 6) |

## I.  INTRODUCTION

Before the Court are J.P. Morgan Chase Bank, N.A.'s ("Chase") combined motions "to compel arbitration, stay proceedings, and dismiss class claims" (ECF No. 6) of Christopher Lowry's ("Lowry") putative class action complaint.  ECF No. 1.  In the respective motions, Chase seeks to compel arbitration, and dismiss with prejudice Lowry's class claims, prior to submitting the claims to arbitration.  Additionally, Chase moves the Court to dismiss the instant action or, alternatively, stay the case pending arbitration resolution.  For the reasons discussed below, the Court grants, in part, and denies, in part, the instant motions.  The Court grants Chase's motion to compel, but denies Chase's request to dismiss with prejudice the class claims.  Accordingly, all of the claims are submitted to arbitration.  The Court also grant's Chase's motion to dismiss.  The entire action is dismissed from the docket of the undersigned, and all remaining motions on the Court's docket are denied as moot.

(4:12-cv-00816)

## II.  BACKGROUND

On August 1, 2011, Lowry entered into a Promissory Note and Security Agreement

(the "Loan Agreement") with Chase for the purpose of purchasing an automobile.  ECF Nos. 1

and 19-1.  The Loan Agreement executed by Plaintiff contains an "AGREEMENT TO

ARBITRATE DISPUTES" ("Arbitration Agreement").  It states in pertinent

part that:

> IF EITHER OF US CHOOSES, ANY CLAIM OR DISPUTE
> BETWEEN US (AS DEFINED BELOW) WILL BE DECIDED BY
> ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.

ECF No. 19-1.

The Arbitration Agreement also includes the following class action waiver:

> IF EITHER OF US CHOOSES TO ARBITRATE, YOU WILL GIVE
> UP YOUR RIGHT TO PARTICIPATE AS A CLASS OR OTHER
> REPRESENTATIVE ON BEHALF OF OTHER PERSONS OR AS A CLASS
> MEMBER OR OTHER REPRESENTED PERSON ON ANY CLASS CLAIM
> OR OTHER REPRESENTATIVE TYPE OF CLAIM YOU MAY HAVE
> AGAINST US INCLUDING ANY RIGHT TO CLASS OR OTHER
> REPRESENTATIVE ARBITRATION OR ANY CONSOLIDATION OF
> INDIVIDUAL ARBITRATIONS.

ECF No. 19-1.

The Arbitration Agreement broadly defines "any claim or dispute between us" as:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the
> interpretation and scope of this clause, and the arbitrability of the claim or
> dispute), between you and us or our employees, agents, successors or assigns,
> which arise out of or relate to your credit application, this [Loan Agreement] or
> any resulting transaction or relationship (including any relationship with third
> parties who do not sign this [Loan Agreement]) shall, at your or our election, be
> resolved by neutral, binding arbitration and not by court action."

ECF No. 19-1.

2

(4:12-cv-00816)

On April 5, 2012, Lowry filed a complaint with this Court, asserting four causes of action related to his transaction in purchasing an automobile.  ECF No. 1.  Lowry alleges that improper fees were assessed in connection with his loan (ECF No. 1 at ¶¶4-8, 25), he was charged an inflated interest rate/"interest spread premium" (ECF No. 1 at ¶¶9, 13, 22), and illegal kickbacks were paid with regard to his loan (ECF No. 1 at ¶¶14, 77).  Lowry alleges that this conduct violated the Clayton Act, 15 U.S.C. §13, as well as a state statute, and was also a "breach of agency."  In addition to his individual claims, Lowry brings claims on behalf of a putative class consisting of all U.S. residents who purchased a vehicle from an Ohio motor vehicle dealer, which purchase and sale was financed by Chase.  ECF No. 1 at ¶239.

On May 30, 2012, Chase filed the instant motions seeking to (1) compel arbitration, (2) dismiss with prejudice the class allegations, prior to submitting claims to arbitration, and (3) dismiss or, alternatively, stay the remaining individual claims.  ECF No. 6.  Each party has filed responsive briefs (ECF Nos. 8, 11, and 15).  The motions are now ripe for discussion.  Because arbitration is a threshold issue, the Court will first discuss Chase's motion to compel arbitration. ECF No. 6.

## III.  DISCUSSION

### A.  Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") provides that an arbitration clause in an agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "This provision establishes 'a liberal federal policy favoring arbitration agreements.'"  *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669

(4:12-cv-00816)

(2012) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, (1983)).  Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American Courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

But "before compelling an unwilling party to arbitrate, the Court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing *AT&T Techs. v. Communication Workers of Am.*, 475 U.S. 643 (1986)).  Having conducted that limited review, the Court not only finds the Arbitration Agreement to be valid, but also finds all of Lowry's claims fall within the scope of the clause.  Although Lowry raises two distinct arguments attacking both (1) the validity of the Arbitration Agreement and (2) its scope, the Court finds neither argument availing.

### 1.  Validity of the Arbitration Agreement

Before a court can compel arbitration, it must first determine that a valid agreement to arbitrate exists.  9 U.S.C. § 2 (1947); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  Lowry does not deny that he signed the Loan Agreement containing the Arbitration Agreement.  Instead, he asserts that the class action waiver invalidates the arbitration clause because it obstructs vindication of his statutory rights.  ECF Nos. 8 and 11.  In support of his argument, Lowry principally relies upon a series of opinions issued by the Second Circuit Court

4

(4:12-cv-00816)

of Appeals referred to as *In re Am. Express Merchants' Litigation* or "*Amex*". [1]

In *Amex*, the Second Circuit determined that an arbitration agreement containing a class waiver could not be enforced where the plaintiff presented evidence establishing that the cost of prosecuting an individual antitrust claim in arbitration would outweigh any potential recovery, thereby depriving the plaintiff of its right to vindicate a federal statutory claim.  667 F.3d at 218. The Second Circuit drew support for its holding from the Supreme Court decision, *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79 (U.S. 2000), which recognized that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum"[2] and established a test:  "Where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears re burden of showing the likelihood of incurring such costs."[3]

In keeping with the Supreme Court's instruction in *Randolph*, the Second Circuit struck down the arbitration clause at issue in *Amex*, but only after the litigants presented evidence establishing *as a matter of law* that the only economically feasible means for the litigants to enforce their statutory rights would be *via* a class action.  *Amex*, 667 F.3d 204, 217-18.

---

[1] *See Italian Colors Rest. v. Am. Express Travel Related Servs. Co. , 554 F.3d 300 (2d Cir. N.Y. 2009); Nat'l Supermarkets Assoc. v. Am. Express Travel Related Servs. Co. , 634 F.3d 187 (2d Cir. 2011); Italian Colors Rest. v. Am. Express Travel Related Servs. Co.,* 667 F.3d 204 (2d Cir. 2012); *Nat'l Supermarkets Ass'n v. Am. Express Travel Servs. Co.*, 681 F.3d 139 (2d Cir. 2012).

[2] *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, (U.S. 2000)

[3] *Id.* at 90.

5

(4:12-cv-00816)

Lowry asserts that this Court should follow the holding of *Amex* and proceed with the litigation of his proposed class action, given that "the exact same elements present in *Amex* are also present in the instant matter." ECF No. 8 at 11.  In addition to highlighting that both cases involve anti-trust claims, Lowry takes special care in emphasizing to the Court his assertion that as in *Amex*, "Plaintiff's counsel presents objective factual proof of the economic infeasibility of Plaintiff-Lowry bringing this case forward on an individual basis." ECF Nos. 8 at 9; 15 at 3.  But the Court disagrees with Lowry's assessment.

Assuming *arguendo* that the "prohibitively expensive" analysis employed by the Second Circuit in *Amex* applies to the case at hand, there is no doubt that Plaintiff has not met his requisite showing, *ie.* that the class action waiver bars him from vindicating his statutory rights. Unlike the litigants in *Amex*, who provided a detailed affidavit from a professional economist analyzing the costs of arbitration and whether it would be economically rational for the litigants to pursue recovery of damages,[4] Lowry provides the Court with only a mere estimate from an economist to prepare an affidavit going to those issues. ECF No. 8-1.  Such proffer is insufficient.  Accordingly, the Court declines to invalidate the arbitration agreement on the grounds laid out in *Amex* decisions.[5]  *See Amex*, 681 F.3d at 142 (providing a list of cases

---

[4] *Amex*, 667 F.3d 204, 217-18.

[5] Lowry also asserts that the "illegal acts" alleged in the Complaint "infect the entire transaction – the entire purchase, sale and financing of the motor vehicle" such that the "entire arbitration clause is unenforceable, void, without effect and cannot be partitioned and parceled about to apply to some but not all of the claims set forth in Plaintiff's Complaint." ECF No. 8 at 15.  The Court, however, finds this argument unavailing in light of Sixth Circuit case law indicating that any allegations of fraud that go to the making of the entire contract must be heard by the arbitrator.  *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003).

(4:12-cv-00816)

wherein courts refused to strike class arbitration waivers because the plaintiffs failed to establish that the waiver would preclude plaintiffs from pursuing their claims).

### 2. Scope of the Agreement

Lowry additionally argues that the Court should deny Chase's motion because his claims are not covered by the Arbitration Agreement.  He asserts this to be true because his claims involve conduct that was not "anticipated" by the contract - *i.e.*, illegal kickbacks and undisclosed terms involving third parties.  ECF No. 8 at 14-15.

As the Sixth Circuit has recognized, "any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003).  In this case, there is no doubt that Lowry's claims are covered, as they are encompassed by the plain language of the Arbitration Agreement.  Not only does the Arbitration Agreement cover all claims arising out of Plaintiff's relationship with Chase, which is created by the Loan Agreement, it expressly covers any claims arising out of Chase's relationships with third parties which result from the Loan Agreement.  The Arbitration Agreement expressly provides that it covers all claims arising out of the Loan Agreement "or any resulting transaction or relationship (including any relationship with third parties who do not sign this [Loan Agreement…"].  ECF No. 19-1.  Therefore Lowry fails to convince the Court that any "hidden" or third party transactions are excluded from the scope of the Arbitration Agreement.

7

(4:12-cv-00816)

The Court likewise finds unavailing Plaintiff's argument that his claims fall outside the scope of the Arbitration Agreement because no "reasonably intelligent person" would have agreed to arbitrate claims arising out of "hidden" conduct.  ECF No. 8 at 14-15.  A similar argument was made in, *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir. 2003), which involved a "massive fraud" by a stockbroker who misappropriated millions from his clients' accounts.  340 F.3d at 391.  The arbitration agreement found in the account agreements covered "[a]ny controversy arising out of or relating to any of my accounts, to transactions with you for me, or to this or any other agreement or the construction, performance or breach thereof."  340 F.3d at 392.  The district court found that "conduct amounting to theft is so beyond what is expected from a broker that such conduct could not have been within the reasonable contemplation of the Plaintiffs when they signed the alleged account agreements."  *Id*. at 395.  On appeal, the Sixth Circuit reversed, holding that the relevant test is "whether the action could be maintained without reference to the contract or relationship at issue.  If it could, it is likely outside the scope of the arbitration agreement."  *Id*. at 395.  After applying that test, the Sixth Circuit found that the alleged conduct was covered by the arbitration clause:

> The lawsuit by necessity must describe why [defendant] was in control of the plaintiffs' It is evident that the fraudulent activities were a violation of the account agreements and arose out of activities contemplated by those agreements [,] the sale and purchase of securities and the management of accounts. money and what the brokerage houses' obligations were. The plaintiffs therefore cannot maintain their action with reference to the account agreements, and accordingly, this action is covered by the arbitration clauses.

*Id*. at 395.

(4:12-cv-00816)

This Court, finding the test articulated in *Fazio* applicable to the case at hand, concludes that Lowry's claims are covered by the arbitration agreement as Lowry's action cannot be maintained without reference to the contract or relationship at issue. All of his claims are expressly based on his transaction with Chase and the dealership. ECF No. 1 at ¶¶33-61. The purpose of the action is to challenge fees and interest charged to him as part of that transaction. The relevant duties that he claims were owed to him arise from the transaction. ECF No. 1 at ¶¶164-201.

In light of the foregoing analysis, the Court grants Chase's motion to compel the instant case to arbitration.

**B.  Motion to Dismiss with Prejudice Lowry's Class Allegations**

Chase also moves the Court to dismiss with prejudice Lowry's class allegations, prior to referring Lowry's individual claims to arbitration. In support of its argument, Chase points to the existence of the class action waiver and asserts that pursuant to the waiver, Lowry contractually agreed not to pursue or participate in any class action. ECF No. 6 at 2, 8-9. Although the Court is inclined to agree with Chase's interpretation concerning the class action waiver's preclusive effect, the Court ultimately finds Chase's request premature.

Ruling upon Chase's motion would obviously involve contract interpretation and would force the Court to determine whether the waiver prohibits Lowry from pursuing class arbitration relief. Courts in this Circuit have held that "the question of whether class arbitration is forbidden is initially a question of contract interpretation and should be decided in the first instance by an arbitrator." *Brookdale Senior Living, Inc. v. Dempsey*, 2012 U.S. Dist. Lexis 57731, *10-11

9

(4:12-cv-00816)

(M.D. Tenn. 2012) (quoting *Aracri v. Dillard's, Inc.*, 2011 U.S. Dist. Lexis 41596, *10-11 (S.D. Ohio 2011)*).  The Arbitration Agreement even suggests the same.  It defines "any claim or dispute" that will be decided by arbitration, to include "the interpretation and scope of this clause, and the arbitrability of the claim or dispute."  ECF No. 19-1.

Accordingly, the Court denies Chase's motion to dismiss with prejudice the class allegations, prior to submitting the claims to arbitration.

**C.  Motion to Dismiss or, Alternatively, Stay the Case**

Chase lastly moves the Court to dismiss the action or, in the alternative, stay the instant matter until arbitration has ended.  Pursuant to the FAA, where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  Nevertheless, the Sixth Circuit has held that litigation "in which all claims are referred to arbitration may be dismissed."  *Hensel v. Cargill, Inc.*, 1999 U.S. App. Lexis 26600 (6th Cir. 1999); *see also Alford v. Dean Witter Reynolds Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that dismissal is proper where all claims must be submitted to arbitration); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (holding that 9 U.S.C. § 3 does not preclude dismissal).  Given that the Court deems all of Lowry's claims arbitrable, the Court finds dismissal of the action appropriate.  Chase's motion to dismiss the instant action is therefore granted.

10

(4:12-cv-00816)

## IV.  CONCLUSION

For the reasons discussed above, the Court grants, in part, and denies, in part, the instant

motions.  ECF No. 6.  The Court grants Chase's motion to compel, but denies Chase's request to

dismiss with prejudice the class claims.  Accordingly, all of the claims are submitted to

arbitration.  The Court also grant's Chase's motion to dismiss.  The entire action is therefore

dismissed from the docket of the undersigned, and all pending motions on the Court's docket are

denied as moot.


IT IS SO ORDERED.


 September 11, 2012                              /s/ Benita Y. Pearson
Date                                         Benita Y. Pearson
                                             United States District Judge

11